In the Matter of the Claim of THOMAS J. DOUGHERTY, Respondent against J. F. QUAKENBUSH WAVERLY STAGE Co. et al., Appellants, and SPECIAL DISABILITY FUND, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 18, 1960.

*Morris N. Lissauer, Charles G. Tierney* and *George J. Hayes* for appellants.

*Mandeville Buck* for claimant-respondent.

*John M. Cullen* for Special Disability Fund, respondent.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

GIBSON, J.  This is a second-injury case under the Workmen's Compensation Law.  In question is the effect of a recovery in a third-party action upon the carrier's right to reimbursement from the Special Disability Fund under subdivision 8 of section 15 of the Workmen's Compensation Law.  The employee's right · to compensation in the amount awarded is conceded, as is the eventual liability of the Special Fund; the sole issue being the date from which the Special Fund shall make reimbursement.

The employee's accident and injury gave rise to a third-party action which was settled with the carrier's consent.  The net proceeds were sufficient to reimburse the carrier for the compensation payments which had been made by it for approximately 88 weeks and, in addition, to provide for claimant a net recovery which would not be exhausted, so as to entitle him to deficiency compensation, until the lapse of an additional period of approximately 193 weeks.  (Workmen's Compensation Law, § 29, subds. 1, 4.)  Under the second-injury statute, the carrier is entitled to reimbursement from the Special Fund "for all compensation and medical benefits subsequent to those payable for the first one hundred four weeks of disability ".  (Workmen's Compensation Law, § 15, subd. 8, par. [d].)  The Workmen's Compensation Board has held that the Special Fund is not

liable until the carrier has made 104 weekly compensation payments additional to all payments for which it has obtained reimbursement from the proceeds of the third-party settlement. The board has held, further, that the proceeds of the net recovery retained by claimant may not be treated, for purposes of paragraph (d), as the equivalent of compensation paid or received for any part of the 104 weeks. In short, the board's theory is that under paragraph (d) the carrier must be actually out of pocket the amount of 104 weekly payments before its liability shall terminate and that of the Special Fund commence. Consequently, by the decision appealed from, payments of compensation on account of the injury sustained July 17, 1950 were directed to be resumed by the carrier after December 8, 1955 (when the share of the recovery held by claimant was exhausted and deficiency compensation became payable) and to be continued for 104 weeks, after which the responsibility would become that of the Special Fund.

The board's decision is based, as is the Special Fund's argument here, upon the decision in *Matter of Hastings* v. *Hugh T. Beckwith, Inc.* (4 A D 2d 714, affd. 3 N Y 2d 975) and more particularly upon certain language in this court's memorandum decision. In the *Hastings* case, the carrier sought reimbursement under the statute (Workmen's Compensation Law, § 15, subd. 8, par. [d]) for compensation paid after the lapse of 104 weeks from the date of injury, although compensation payments were made for but six weeks during that period. In our memorandum decision, we referred to paragraph (d) and to the opinion of the Court of Appeals in *Matter of Mastrodonato* v. *Pfaudler Co.* (307 N. Y. 592) and said (p. 715): " As to the present statute, the court, in the *Mastrodonato* case (*supra*, p. 596), said: ' Apparently recognizing the difficulties of proof required to demonstrate what portion of the disability is attributable to the second injury, the Legislature, by the present statute (L. 1947, ch. 431), has allocated the first 104 weeks of disability to the second injury, and directed that the payment of subsequent compensation be reimbursed out of the Special Fund.' It does not seem to us that by thus overcoming the difficulties of apportionment, the Legislature intended, in addition, to decrease the monetary liability of carriers in cases such as this and to cast a greater burden upon the Special Fund. More reasonable, in our view, is the conclusion that in continuing the policy that the cost of compensation paid a physically handicapped employee should be borne in a relatively small proportion by the employer or his carrier and the Special Fund invaded for the remainder, the moving consideration was, as

theretofore, a monetary one and not a limitation in point of time.'' The factors of subrogation and of a fund constituted as the result of a third-party settlement were not present in the *Hastings* case and our reference to a possible decreased '' monetary liability of carriers *in cases such as this* '' (emphasis supplied) was significant only as it constituted a co-ordinate or measure of the '' greater burden '' which would be cast upon the Special Fund should we sustain the carrier's theory of the 104-week period as a mere time limitation. In this case, however, the imposition of liability upon the Special Fund as of the date deficiency compensation became payable, while incidentally relieving the carrier of any cost arising out of the accident, would constitute no corresponding loss to the Special Fund nor any '' greater burden '' than is cast upon it in any case under the statute. On the contrary, the liability of the Special Fund, ordinarily accrued after 104 weeks of compensation, has been deferred for almost 281 weeks as a result of the third-party settlement. An even more striking illustration appears in *Matter of Bowdring* v. *Superior House & Window Cleaning,* decided herewith (10 A D 2d 751), in which the application of the net proceeds of a $40,000 settlement served to defer the Special Fund's liability for a period in excess of 10 years. The carefully prescribed procedure governing third-party actions and settlements and the application of the proceeds (Workmen's Compensation Law, § 29) makes no provision for the Special Disability Fund or for any intervention or consent on its part. As might be expected, in view of the theory of subrogation generally and in the interest of prompt and effective procedure, such matters are made the sole concern of the claimant and the carrier.

Nevertheless, as this case and that of *Bowdring* (*supra*) serve to illustrate, the Special Fund will in some cases derive far more substantial benefits from third-party recoveries than will the carriers. It need scarcely be remarked, however, that ordinarily there would be no particular reason or incentive for a carrier, in a second-injury case, to co-operate in and consent to a third-party settlement or to sue as subrogee if it is to derive no substantial advantage and if it must in either event pay all compensation and medical benefits for 104 weeks without reimbursement. The ensuing disadvantage to claimant and Special Fund alike in the legal situation for which the latter contends is obvious.

Additionally, the acceptance of the theory here propounded by the Workmen's Compensation Board would seem to militate in some degree at least against the oft expressed purposes of

the second-injury law (see Workmen's Compensation Law, § 15, subd. 8, par. [a]) if carriers and self-insured employers may not have effective reimbursement from third-party recoveries by employees suffering from pre-existing defects as they may in cases of employees who were whole and in sound health when hired.

Finally, the decision appealed from seems to us to effect an even more specific infringement of the statute. Paragraph (d) was intended to allocate to the second injury the first 104 weeks of paid compensation and to make the payment of subsequent compensation the responsibility of the Special Fund. (*Matter of Mastrodonato* v. *Pfaudler Co.,* 307 N. Y. 592, *supra*; *Matter of Hastings* v. *Hugh T. Beckwith, Inc.,* 4 A D 2d 714, affd. 3 N Y 2d 975, *supra.*) The first purpose was effected in this case by the carrier's payment of compensation and medical benefits for approximately 88 weeks and by what was in effect the application of the moneys held by claimant to payment of compensation for the remainder of the period and for a long time beyond, the moneys so held being treated as the equivalent of compensation (Workmen's Compensation Law, § 29, subd. 4; and see *Matter of Curtin* v. *City of New York,* 287 N. Y. 338). The payments and the period allocated to the second injury having been completed, the compensation for disability thereafter was the responsibility of the Special Fund which then, however, gained the fortuitous advantage of a substantial deferment beyond the statutory period and a consequent decrease in its monetary liability. Its liability being thus fixed, there is no basis for the contention that that of the carrier should be reinstated.

The questions presented by this appeal arise also in *Matter of Constant* v. *Constant Spray Painting Co.* (10 A D 2d 750) and *Matter of Bowdring* v. *Superior House & Window Cleaning* (10 A D 2d 751, *supra*), both decided herewith, the *Constant* case presenting an additional issue with respect to the carrier's voluntary reduction of its lien.

The decision and award should be reversed and the case remitted to the Workmen's Compensation Board for further proceedings, with costs to appellants against respondent Special Disability Fund.

BERGAN, P. J., COON, HERLIHY and REYNOLDS, JJ., concur.

Decision and award reversed and case remitted to the Workmen's Compensation Board for further proceedings, with costs to appellants against the respondent Special Disability Fund.